No. 25-2109

IN THE
**United States Court of Appeals**
FOR THE TENTH CIRCUIT

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellant*
*v.*
**KOMILJON TOIROV,**
*Defendant-Appellee*

On Appeal from the United States District Court
for the District of New Mexico
D.C. No. 25-CR-1801 (The Hon. Sarah M. Davenport)

# MEMORANDUM BRIEF FOR THE UNITED STATES

October 2025

RYAN ELLISON
*Acting United States Attorney*
District of New Mexico
201 3rd St. NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274

## TABLE OF CONTENTS

TABLE OF CASES AND OTHER AUTHORITIES ........................................ ii

PRIOR OR RELATED APPEALS ........................................ v

ISSUE PRESENTED ........................................ 2

BACKGROUND ........................................ 2

STATEMENT OF THE CASE ........................................ 4

ARGUMENT ........................................ 6

I. An Alien's Intent to Enter the United States Without Inspection Satisfies the Willfulness Standard of Section 797. ........................................ 7

A. The District Court Correctly Concluded That Section 797's Willfulness Element Does Not Require Knowledge of the Law. ... 8

B. The District Court Erroneously Engrafted an Atextual Scienter Element. ........................................ 11

1. *The Statutory Text Embodies No Scienter Requirement as to the Existence or Provenance of a Military Installation* ........................................ 15

2. *A Presumption of Scienter Is Likewise Inapposite Because the NMNDA's Status Is a Jurisdictional Element* ............ 17

3. *Because the Willfulness Element Already Distinguishes Innocent from Culpable Conduct, No Presumption of Scienter Is Warranted* ........................................ 20

II. Entering the United States Without Inspection Is a "Purpose Prohibited by Law" That Satisfies Section 1382's Specific-Intent Standard. ........................................ 18

A. The District Court Correctly Determined That the Government Need Not Prove Intent to Trespass on Military Property Where, As Here, the Defendant Acted for an Independent Unlawful Purpose. ........................................ 19

B. The Court Incorrectly Engrafted an Atextual Scienter Requirement as to Restricted Military Status on Top of the Specific Intent Already Required by Section 1382 ....................... 21

CONCLUSION ..... 23

TYPE-VOLUME CERTIFICATION ..... 24

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION ..... 25

**TABLE OF CASES AND OTHER AUTHORITIES**

Page

*Bryan v. United States*,
524 U.S. 184 (1998) ..... 11, 13-17, 20, 21

*Cheek v. United States*,
498 U.S. 192 (1991) ..... 13, 15

*Elonis v. United States*,
575 U.S. 723 (2015) ..... 25

*Liparota v. United States*,
471 U.S. 419 (1985) ..... 21

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) ..... 16

*Ratzlaf v. United States*,
510 U.S. 135 (1994) ..... 14, 15

*Rehaif v. United States*,
588 U.S. 225 (2019) ..... 20

*Torres v. Lynch*,
578 U.S. 452 (2016) ..... 18

*United States v. Benton*,
988 F.3d 1231 (10th Cir. 2021) ..... 13, 15

*United States v. Cisneros*,
328 F.3d 610 (10th Cir. 2003) ........................................................................ 11

*United States v. Cottier*,
759 F.2d 760 (9th Cir. 1985) .......................................................................... 24

*United States v. Evans*,
74 F.4th 597 (4th Cir. 2023) ........................................................................... 17

*United States v. Feola*,
420 U.S. 671 (1975) ......................................................................... 18, 19, 25

*United States v. Floyd*,
477 F.2d 217 (10th Cir. 1973) ........................................................................ 24

*United States v. Hall*,
742 F.2d 1153 (9th Cir. 1984) ........................................................................ 24

*United States v. Joseph*,
530 F. App'x 911 (11th Cir. 2013) ................................................................... 13

*United States v. Parrilla Bonilla*,
648 F.2d 1373 (1st Cir. 1981) ......................................................................... 24

*United States v. Wyatt*,
964 F.3d 947 (10th Cir. 2020) .................................................................. 13, 21

Statutes

8 U.S.C. § 1325 .................................................................................... 8, 15

8 U.S.C. § 1325(a)(1) ........................................................................................ 14

18 U.S.C. § 111 ................................................................................................. 18

18 U.S.C. § 922(a)(1)(A) .................................................................................... 16

18 U.S.C. § 1382 ..................................................... 5, 6, 8, 10, 23, 24, 25, 26

18 U.S.C. § 1855 ............................................................................................... 17

18 U.S.C. § 3141 ................................................................................................. 5

18 U.S.C. § 3142 ................................................................................................. 5

18 U.S.C. § 3142(e)(1) .......... 11

18 U.S.C. § 3142(g)(2) .......... 11

50 U.S.C. § 797 .......... 5, 6, 8, 21

50 U.S.C. § 797(a) .......... 16

50 U.S.C. § 797(a)(1) .......... 5, 12

50 U.S.C. § 1601 .......... 7

Rules

Tenth Cir. R. 9.6(B) .......... 6

## PRIOR OR RELATED APPEALS

This case comes before the Court a second time. In the prior appeal, Tenth Circuit No. 25-2074 ("*Toirov I*"), the government appealed an order releasing Komiljon Toirov from custody under the Bail Reform Act (18 U.S.C. § 3141 *et seq*.) pending his trial on two military-trespass charges: 50 U.S.C. § 797 and 18 U.S.C. § 1382. The district court's order was premised on its understanding that these statutes required proof the government contended it did not need but conceded it did not have: that when Toirov crossed the border from Mexico into the United States and the New Mexico National Defense Area (NMNDA), he did so knowing that he was entering restricted military property. 1A.45; 3A.41. This Court initially remanded the matter to the district court "for the limited purpose of entering alternative 18 U.S.C. § 3142 findings under the assumption that the government's interpretation of 18 U.S.C. § 1382 and 50 U.S.C. § 797(a)(1) is correct." 4A.7.

The district court complied and entered alternative findings that if no proof was needed that Toirov knew the land's restricted status, he would "present[] a risk of non-appearance" and thus "the Court would have detained [him] pending resolution of this case." 4A.17-18.

Following that clarification, a divided panel vacated the release order and remanded for further consideration. 4A.19-20. The majority concluded it was error to "treat[] the answer to the statutory-interpretation question

(*i.e.*, the state of mind required to violate 18 U.S.C. § 1382 and 50 U.S.C. § 797) as essentially dispositive" of Toirov's eligibility for release. 4A.19-20. "In particular," the majority said, "the district court failed to consider whether the defendant is a flight risk even if the statutory-interpretation question is resolved in his favor." *Id.*[1]

On remand, the district court reaffirmed its release order. While denying that "the weight of the evidence is determinative," 4A.30, the court again relied heavily on its view that the government's legal theory is incorrect. It concluded, for example, that Toirov presents little flight risk because he will likely be acquitted at trial. 4A.28-29. The present appeal, brought under 18 U.S.C. § 3731, concerns this new order.

## ISSUE PRESENTED

Should the amended order of release be reversed because it rests on a legal error—namely, that the military-trespass statutes require proof that the defendant knew of the land's restricted military status?

## BACKGROUND

The President, whose Article II authority includes foreign affairs and command of the Armed Forces, has observed that "[o]ver the last 4 years, the United States has endured a large-scale invasion at an unprecedented level."

---

[1] Under Tenth Cir. R. 9.6(B), this decision is not law of the case.

The White House, *Securing Our Borders* (Jan. 20, 2025). Accordingly, under sections 201 and 301 of the National Emergencies Act (50 U.S.C. § 1601 *et seq*.), the President declared a national emergency at the Southern Border. The White House, *Declaring a National Emergency at the Southern Border of the United States* (Jan. 20, 2025). In his judgment, "the gravity and emergency of this present danger and imminent threat" make it "necessary for the Armed Forces to take all appropriate action to assist the Department of Homeland Security in obtaining full operational control of the southern border." *Id.*

That mission has necessitated the extension of military installations and placement of military personnel along the Border. To that end, on April 15, 2025, the Department of the Interior transferred over 109,651 acres of federal land along the Border—including the approximately 60-foot-wide Roosevelt Reservation in New Mexico—to the Department of Defense. *See* Public Land Order No. 7963. Three days later, the Secretary of the Army made these lands, now designated as the NMNDA, part of the Fort Huachuca U.S. Army installation. The same day, Fort Huachuca's commander issued a security regulation designating the NMNDA as a restricted, controlled area under Army Regulation 190-13, which prohibits unauthorized entry onto such areas.

The NMNDA's creation carries legal consequences for non-military personnel. Among other statutes enacted to protect the integrity of military property, Congress has made it a misdemeanor to "willfully violate[] any defense property security regulation," 50 U.S.C. § 797, such as the one designating the NMNDA a restricted and controlled area. Congress has also sought to safeguard against unlawful activity on military property by making it a misdemeanor to "go[] upon any military…installation, for any purpose prohibited by law or lawful regulation." 18 U.S.C. § 1382.

## STATEMENT OF THE CASE

1.     On the evening of May 4, 2025, Border Patrol agents received an alert from the NMNDA, approximately seven miles east of the Santa Teresa Port of Entry. 1A.30-31. Agents responded to the area and discovered several people, including Toirov, hiding in nearby brush. Toirov admitted that he was a citizen of Uzbekistan and that he had just entered the country unlawfully. *Id*. He was charged with violating 8 U.S.C. § 1325 (entry without inspection), 50 U.S.C. § 797 (willfully violating a defense property security regulation) and 18 U.S.C. § 1382 (unlawfully entering a military reservation). 1A.26-27.

2.     Toirov's arrest was one of many made in the NMNDA in late spring. The military-trespass charges prompted Chief Magistrate Judge Gregory Wormuth to open a miscellaneous matter (25-MC-19) and order the government to assert "its position as to the appropriate mens rea standard

for both statutes." 2A.5. In response, the government contended that both statutes could be satisfied by proving that the defendant acted with culpable purpose, which itself could be proven by showing that the defendant crossed into the country in deliberate contravention of law. *Id*. at 6-19.

3.      Judge Wormuth disagreed and entered an order in Toirov's case (and others) concluding that both statutes require awareness of the land's restricted military status. 1A.10-25. Because the complaint did not support that mens rea, Judge Wormuth dismissed the NDA charges. *Id*. at 25.

4.      The government subsequently filed an information charging Toirov with the same three offenses contained in the complaint. 1A.26-27. Toirov pleaded guilty to the § 1325 charge before a magistrate judge. *See id*. at 4 (docket entry 8). That judge sentenced Toirov to time served on the illegal-entry charge, *id*., and ordered his release pending trial on the NDA charges, *id*. at 29. The United States appealed that release order to the district court. *Id*. at 28.

5.      In briefing, the government argued that Toirov should be detained as a flight risk, 1A.30, 33, and that under a correct view of the mens rea requirements, the evidence in support of the NDA charges was strong. *Id*. at 33-35.

5.      The district court held a hearing on detention. The hearing focused on the weight of the evidence against Toirov, and in particular on the

*mens rea* showing required by § 797 and § 1382. 3A.7-63; *id.* at 10 (court remarking that "the real issue is the weight of the evidence"); *id.* at 11. At the hearing's conclusion, the court ruled that both statutes require proof that the defendant knew he was "entering… some kind of military restricted area," *id.* at 45; in reaching that conclusion, it expressly "adopt[ed]" Judge Wormuth's view, *id.* at 40; 1A.44. The court then concluded that "the weight of the evidence" against Toirov was "not strong" because the government could not prove Toirov knew the land he had entered was a military reservation. 3A.41. Accordingly, it affirmed the release order. 1A.44-45.

The government appealed. 1A.46. As described above, *Toirov I* first resulted in the district court's alternative finding that it would detain Toirov as a flight risk *if* the government's mens rea positions were correct, 4A.17-18, and ultimately in the court's reaffirmance that Toirov is not a flight risk because the government's evidence is weak under the court's reading of the mens rea elements, 4A.28-29.

Since July 30, 2025, Toirov has been released on supervision by Immigration and Customs Enforcement (ICE) pending his removal to Uzbekistan. 4A.16.

## ARGUMENT

Under the Bail Reform Act, a court must detain a defendant pending trial if it "finds that no condition or combination of conditions will reasonably

assure the appearance of the person as required." 18 U.S.C. § 3142(e)(1). In determining whether that is so, the court "shall take into account the available information concerning," among other things, "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). Having considered all the factors under § 3142(g), the district court here determined that the weight of the evidence—or rather, the lack thereof—tips the scales toward finding that pretrial detention is not necessary to "reasonably assure" Toirov's trial appearance. 4A.28-29, 31. Because this assessment rests on a statutory-interpretation error, the release decision must be reversed. To be clear, the government does not seek reversal on any other ground.

The Tenth Circuit reviews de novo the decision to detain or release a criminal defendant pending trial. *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).

## I      An Alien's Intent to Enter the United States Without Inspection Satisfies the Willfulness Standard of Section 797.

Section 797(a)(1) prescribes misdemeanor penalties for anyone who "willfully violates any defense property security regulation." This "willfulness requirement … does not carve out an exception to the traditional rule that ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 196 (1998). Rather, a defendant who enters the country and the NMNDA not through a designated port of entry—and knows that such conduct is unlawful

because it constitutes an unlawful entry into the United States itself—has violated Section 797 by "willfully violat[ing]" the military regulation that prevents unauthorized NMNDA entries. To convict a defendant under these circumstances, the government must show:

(1)    The defendant knowingly and voluntarily entered the United States from Mexico through an area that is not a designated port of entry.

(2)    The defendant knew that, by entering the United States in that manner, he was acting unlawfully.

(3)    When entering the United States from Mexico through an area that is not a designated port of entry, the defendant also entered upon the NMNDA military installation.

(4)    The NMNDA is regulated by a "defense property security regulation" that precludes unauthorized entry upon the NMNDA.

(5)    The defendant was not authorized to enter the NMNDA.

*See* 50 U.S.C. § 797(a)(1).

The district court's determination that the statute requires knowledge that the defendant knew he was entering a restricted military area contravenes both the text of Section 797 and the background legal principles against which it was enacted.

### A.    The District Court Correctly Concluded That Section 797's Willfulness Element Does Not Require Knowledge of the Law.

We begin on common ground. The district court correctly determined that the form of willfulness required under Section 797—"knowledge that the

conduct is unlawful"—"can be sufficiently shown by [Toirov]'s simultaneous illegal entry into the United States." 1A.14-16.

Generally, "[t]he term 'willfully' … [only] requires proof the defendant 'acted with knowledge that his conduct was unlawful.'" *United States v. Benton*, 988 F.3d 1231, 1238 (10th Cir. 2021) (quoting *Bryan*, 524 U.S. at 193). In such cases, "[t]he government need not show … that the defendant was aware of the particular statute he was violating." *United States v. Joseph*, 530 F. App'x 911, 919 (11th Cir. 2013). The government must show only that the defendant knew he was doing "*something* that was unlawful." *United States v. Wyatt*, 964 F.3d 947, 958 (10th Cir. 2020) (emphasis added). Accordingly, "when used in the criminal context, a 'willful' act" follows "the traditional rule that ignorance of the law is no excuse." *Bryan*, 524 U.S. at 191-95.

"[A]n exception to [this] traditional rule" exists for "highly technical statutes that present[] the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan*, 524 U.S. at 194. For example, in "cases involving willful violations of the tax laws," the Supreme Court has required "the jury [to] find that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Id.* (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991)). The same holds for "structuring of cash transactions to avoid a reporting requirement," which likewise subjects to

liability "apparently innocent conduct." *Id.* (citing *Ratzlaf v. United States*, 510 U.S. 135, 138, 149 (1994)). But in all such cases, it is "[t]he danger of convicting individuals engaged in apparently innocent activity that motivated" the extension of *mens rea* beyond its traditional bounds. *Id.* at 195. Where no such risk is present because the defendant "knew that his conduct was unlawful," no such heightened *mens rea* attaches.

Section 797 does not fit within *Bryan*'s exception for "'highly technical statutes.'" 1A.13-14. A defendant who knows that he is acting unlawfully need not grasp every reason why his conduct is unlawful—*e.g.*, the existence or details of the "defense property security regulation" he is violating. The inapplicability of the rationale for the "'highly technical statute'" carveout—"the danger of ensnaring individuals engaged in apparently innocent conduct," *Bryan*, 524 U.S. at 194—is well illustrated by those whose unlawful entry into the NMNDA was simultaneous to their unlawful entry into the United States. Such conduct cannot be deemed "apparently innocent."

Virtually all aliens who enter NMNDA are not "engaged in apparently innocent conduct." By definition, such individuals have "enter[ed] the United States at … [a] place … [not] designated by immigration officers." 8 U.S.C. § 1325(a)(1). Because such unauthorized entries are generally "undertaken with a 'bad purpose'"—namely, the purpose of violating the Nation's immigration laws and avoiding detection and interdiction by law

enforcement—"[t]he danger of convicting individuals" for unauthorized NMNDA entries due to "apparently innocent conduct" is vanishingly low.[2] *Bryan*, 524 U.S. at 194. The district court therefore appropriately construed Section 797 to require general *Bryan* willfulness rather than the heightened *Cheek*/*Ratzlaf* willfulness reserved for "highly technical statutes," and correctly recognized that the allegations in the complaint satisfied the former standard.

### B. The District Court Erroneously Engrafted an Atextual Scienter Element.

The district court erred, however, in requiring an additional element of "knowledge that the defendant has entered the NMNDA." 1A.19. That atextual scienter element disregards Congress's selection of a willfulness *mens rea* and effectively requires the technical regulatory knowledge deemed irrelevant for this category of offenses under *Bryan* and its progeny.

#### 1. *The Statutory Text Embodies No Scienter Requirement as to the Existence or Provenance of a Military Installation.*

"The mental state sufficient for commission of a federal criminal offense is a question of congressional intent," *Benton*, 988 F.3d at 1238, and "[t]he

[2] This does not mean, however, that Section 1325 and Section 797 (or Section 1382) are satisfied by an identical mens rea showing. Section 1325 requires the intent to enter the United States but not knowledge of unlawfulness. *See* 3A.25 (prosecutor emphasizing need for knowledge of unlawfulness in NDA charges); *cf. id.* at 26 (court suggesting that NDA charges "piggyback" on a Section 1325 offense).

best evidence of congressional intent…is the statutory text that Congress enacted," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 392 (2013).  Nowhere does Section 797 require that the defendant have "known" that he was entering military property. The statute requires only that the defendant have acted "willfully," which—as the court correctly determined—the government may satisfy by showing his culpable purpose of entering the United States without inspection.

In concluding otherwise, the court appeared to reason—relying on *Bryan*—that Section 797's willfulness *mens rea* requires knowledge of all "the facts that constitute th[e] offense"; thus, because one of those facts is entry upon the NMNDA, *see supra* p. 10, the defendant must know he had entered the NMNDA. *See* 1A.18-19. But that cannot be correct. The existence of the "defense property security regulation" is also among the facts constituting the offense, 50 U.S.C. § 797(a), and the court recognized that knowledge of that regulation is unnecessary. *See* 1A.14.

Indeed, *Bryan* itself rejects the court's line of reasoning. There, one of the central facts constituting the defendant's offense was his lack of a federal firearms license. *See* 524 U.S. at 189; 18 U.S.C. § 922(a)(1)(A) (prohibiting anyone "except a licensed importer, licensed manufacturer, or licensed dealer" from dealing in firearms). The Supreme Court held, however, that the willfulness *mens rea* did not require awareness of the federal licensing

requirement; the defendant only had to be aware that his conduct was unlawful more generally. *See Bryan*, 524 U.S. at 196; *see also id.* at 189 & n.8. Although Section 797's willfulness *mens rea* is more demanding than knowledge in the sense that it requires awareness of unlawfulness, it does not require knowledge of each factual component of the offense. *Cf., e.g.*, *United States v. Evans*, 74 F.4th 597, 606-07 (4th Cir. 2023) (holding that a statute prohibiting "willfully and without authority, set[ting] on fire any timber, underbrush, or grass or other inflammable material" on federal land, 18 U.S.C. § 1855, does not require knowledge that the location of the fire is federal land).

2. *A Presumption of Scienter Is Likewise Inapposite Because the NMNDA's Status Is a Jurisdictional Element.*

The district court's analysis appears to be grounded in part in the "presumption of scienter." 1A.17. The court acknowledged, however, that the presumption of scienter does not apply to "a statute's 'jurisdictional elements.'" *Id.* And it recognized that certain legal characteristics of the area onto which Toirov trespassed—that it was "military property with a security regulation"—were "the jurisdictional prerequisites of the crime." *Id.* at 13. But the court nevertheless extended the presumption of scienter to those "jurisdictional prerequisites," at least to the extent that the government must prove Toirov's "knowledge that [he] has entered the NMNDA." *Id.* at 18.

Because the legal status of his entry point as a National Defense Area is jurisdictional, however, any scienter element would not reach that fact. *See Torres* v. *Lynch*, 578 U.S. 452, 468 (2016) ("[W]hen Congress has said nothing about the mental state pertaining to a jurisdictional element, … [c]ourts assume that Congress wanted such an element to stand outside the otherwise applicable *mens rea* requirement.").

In that sense, this case is similar to *United States v. Feola*, 420 U.S. 671 (1975), in which the Supreme Court held that the federal statute penalizing assault on a federal officer, 18 U.S.C. § 111, "cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer," *Feola*, 420 U.S. at 684. There, as here, Congress enacted the relevant provision "to protect both federal officers and federal functions" and to "provid[e] a federal forum" for vindicating those interests. *Id.* at 679, 682. There, as here, liability depended in part on the special governmental status (there, a "federal officer," *id.* at 684; here, a "military property with a security regulation," 1A.13) carried by the object of the offense. And there, the Supreme Court deemed that special status "jurisdictional" and held that "knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction." *Feola*, 420 at 676, 697; *see also id.* at 694 ("[I]mposition of a requirement of knowledge of those facts that serve only to establish federal jurisdiction would render it more difficult to serve

the policy behind the law … without serving any other apparent social policy.”).

This case is like *Feola* in another respect as well: Regardless of his knowledge of any jurisdictional fact, the defendant could be found guilty only if he acted with a culpable purpose. Just like Toirov, the defendant in *Feola* was engaged in unambiguously culpable conduct (there, assault; here, unlawful entry into the United States) but nevertheless sought to evade criminal liability on the basis of his asserted ignorance as to the special-status element. And there, the Court explained that its “interpretation poses no risk of unfairness to defendants” and “is no snare for the unsuspecting” because

> [a]lthough the perpetrator … may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected. In a case of this kind the offender takes his victim as he finds him. The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.

*Id.* at 685. So too here: Although Toirov “may [have] be[en] surprised to find” that he had illegally crossed into military rather than civilian territory, he knew “from the very outset that his planned course of conduct [wa]s wrongful.” In deliberately entering the United States outside of a port of

entry established for that purpose, Toirov must "take[] his [destination] as he finds [it]" and face the consequences of his "willful[]" conduct.

3. *Because the Willfulness Element Already Distinguishes Innocent from Culpable Conduct, No Presumption of Scienter Is Warranted.*

In any event, a *presumption* is just that—an assumption about general practice contingent on certain facts and rebuttable by contrary indicia. Here, Congress's explicit choice of "willful[ness]" in Section 797 overrides any implicit scienter element that might otherwise be inferred.

Moreover, as the Supreme Court has instructed, the presumption of scienter operates only insofar as necessary "to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize *otherwise innocent conduct*.'" *Rehaif v. United States*, 588 U.S. 225, 229 (2019) (emphasis added). Additional knowledge—*i.e.*, about the full contours of and legal rationale for his offense—is not necessary for a defendant who both acts unlawfully and does so "willfully," or for a "bad purpose." *Bryan*, 524 U.S. at 194. When he entered the country without authorization or inspection, Toirov was not engaged in "otherwise innocent conduct," *Rehaif*, 588 U.S. at 229—nor, by definition, would any other defendant who has engaged in a "willful[]" violation of law.

The court correctly determined that Toirov's "intent to illegally enter the United States can satisfy the 'willfully' requirement that Defendant knew

that his conduct was unlawful under 50 U.S.C. § 797." But it erroneously concluded that a presumed scienter element as to the status of the NMNDA was necessary to shield this *willfully culpable* defendant from liability for "otherwise innocent conduct." 1A.18-19. Imposing an additional scienter element here fails to serve the interest that undergirds the scienter presumption.

In all events, Toirov's understanding that he had entered an area where he was not authorized to be present satisfies scienter even without his subjective appreciation of each *reason* that his presence was unauthorized. Just as the defendant in *Liparota v. United States*, 471 U.S. 419 (1985), was liable for food-stamp fraud—notwithstanding his ignorance as to the specific underlying regulations—because he knew, as a general matter, that his conduct "was unauthorized," *id.* at 434, Toirov is liable for violating Section 797—notwithstanding his ignorance of the relevant "defense property security regulation"—because he knew that his conduct was unauthorized.[3]

---

[3] The court also placed undue emphasis (1A.9-10) on the separate requirement in Section 797(b)—distinct from the "misdemeanor violation" set forth in Section 797(a)—that the "regulation … be posted in conspicuous and appropriate places." As noted, the statute does not impose any precondition of actual or constructive notice before imposing criminal liability. Moreover, aliens who enter New Mexico from Mexico outside of a port of entry do not need a sign to tell them that they are doing "something that [is] unlawful." *Wyatt*, 964 F.3d at 958. And even assuming that such aliens had taken the time to read and understand the government's postings, their principal "bad purpose," *Bryan*, 524 U.S. at 191—entering the country unlawfully—would

The court's contrary determination cannot be squared with this foundational principle of *mens rea* jurisprudence.

## II. Entering the United States Without Inspection Is a "Purpose Prohibited by Law" That Satisfies Section 1382's Specific-Intent Standard.

Section 1382 prescribes misdemeanor penalties for, *inter alia*, "[w]hoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation." The district court correctly determined that a defendant who enters the NMNDA from Mexico *for the prohibited purpose* of entering the United States without inspection has violated the plain text of this provision. 1A.20-21. But the court again proceeded to engraft an atextual scienter element onto the "military" status of the site. *Id.* at 21-25. For largely the same reasons already discussed in the context of its faulty Section 797 analysis, the court erred in disregarding Congress's choices, presuming a scienter requirement more stringent than the one that Congress prescribed where none was necessary to distinguish innocent from culpable conduct, and applying this atextual scienter requirement to a jurisdictional element.

---

be unchanged. In short, Congress did not add an additional *mens rea* requirement to the offense set forth in subsection (a) through the roundabout means of subsection (b)'s separate posting provision.

### A. The District Court Correctly Determined That the Government Need Not Prove Intent to Trespass on Military Property Where, As Here, the Defendant Acted for an Independent Unlawful Purpose.

As a threshold matter, the district court correctly determined that "the Complaint establishes probable cause to believe that [Toirov]'s entry and presence in the NMNDA was for [the] unlawful purpose" of "illegally entering the United States" and "elud[ing] any examination." 1A.21.

A defendant violates the relevant paragraph of Section 1382 when he "goes upon" military land—restricted or not—for "*any* purpose" that is unlawful. 18 U.S.C. § 1382 (emphasis added). This would include, of course, some purposes that might have a specific military connection, such as interfering with the military's operation. But it would also reach other prohibited purposes that are not limited to military installations, such as trafficking contraband. When a defendant has such intent to commit an independent crime, he will have a "purpose prohibited by law or lawful regulation," regardless of his knowledge of the land's status.

In some cases, a defendant "goes upon" a military base without authorization without a purpose to commit a crime thereafter. In such cases, the only potential "purpose prohibited by law or lawful regulation" would be the unlawful entry itself, and the government would need to show that the defendant knew he was entering a restricted military zone. As the First

Circuit has explained, "when a section 1382 prosecution proceeds on the basis that the defendant has entered a restricted military reservation 'for the purpose of' unauthorized entry, we think it must be shown that the defendant had knowledge or notice that such entry was, in fact, prohibited." *United States v. Parrilla Bonilla*, 648 F.2d 1373, 1377 (1st Cir. 1981); *see also, e.g., United States v. Floyd*, 477 F.2d 217, 224 (10th Cir. 1973) ("The important fact is that the regulation prohibited entry to certain persons. It becomes a matter of proof as to whether the Defendants were such persons and intended to enter the base knowing that they were so prohibited."); *United States v. Hall*, 742 F.2d 1153, 1154-55 (9th Cir. 1984) ("The prohibited purpose may be the unauthorized entry itself … Thus, going upon a military base with knowledge that such entry is unauthorized violates the statute."). Without such knowledge, a defendant is not acting "for a purpose prohibited by law or lawful regulation," 18 U.S.C. § 1382—he is just innocently traveling onto military land with no culpable mindset. *See United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985) ("The importance of this knowledge arises in that only innocent trespassers are excluded from purview of 18 U.S.C. § 1382.").

Here, the district court correctly determined that Toirov's case does not involve a charge where unauthorized entry into a military installation is itself the unlawful purpose with which the defendant is alleged to have acted. *See* 1A.20-21. Instead, as alleged, Toirov "entered the NMNDA in the process

of illegally entering the United States at a place quite distant from the nearest Port of Entry" and did so "intending to elude [the] examination" required by law. *Id.* at 20. That is a purpose "prohibited by law" separate from the regulation prohibiting Toirov's entry into the NMNDA military installation.

### B. The Court Incorrectly Engrafted an Atextual Scienter Requirement as to Restricted Military Status on Top of the Specific Intent Already Required by Section 1382.

The inquiry should have stopped there. As was the case under Section 797, however, the court went further and applied "the presumption of scienter" to the "going upon the military property" element. 1A.22. That was error.

Like Section 797's requirement of "willful[]" conduct, Section 1382's express intent standard already "separate[s] wrongful conduct from 'otherwise innocent conduct.'" *Elonis v. United States*, 575 U.S. 723, 736 (2015). Simply put, no one who "goes upon a[] military … installation[] for a[] purpose prohibited by law," 18 U.S.C. § 1382, can claim that he was engaged in "otherwise innocent conduct." And in cases where the "purpose prohibited by law" is a further crime that does not itself depend on the military status of the land, the military status of the site serves only to confer federal jurisdiction; it does not create the "wrongful[ness]" of the defendant's conduct. *See Feola*, 420 U.S. at 691 (distinguishing government's burden in

cases where "the underlying offense involved an act clearly wrongful in itself" from cases where "the acts agreed to were wrongful solely because of statutory proscription").

The court nonetheless adopted an additional knowledge-of-land-status element, on the theory that doing so was necessary to avoid a purported "absurdity." Specifically, it posited a motorist "driving along … a road [that passes through a military base] intending to commit a crime in the next town" and suggested that such a person "would be guilty of a 18 U.S.C. § 1382 crime by the government's logic…even if they never committed the crime when they arrived at the next town and thus had never engaged in any knowingly culpable conduct." 1A.23. The court could not abide "[t]he absurdity of such a result." *Id.*

That reasoning is unsound. There is nothing "absurd" about imposing liability on someone who undertakes an action—even a preliminary or inchoate one—"for a[] purpose prohibited by law." And it is not necessary for this Court to definitively determine that Section 1382 reaches all persons who—knowingly or not—merely *traverse* a military installation *en route* to a future crime. The word "for" in Section 1382 could connote an instrumental rather than incidental relationship between the defendant's entry and his unlawful purpose. But that reading encompasses defendants like Toirov, so this case does not implicate the feared absurdity. Nor does it suggest the

government could necessarily prosecute someone for merely "step[ping] on land he does not know is part of [a] base … without having any culpable intent," 1A.24; an unlawful purpose is necessary under Section 1382.

## CONCLUSION

The detention decision misunderstands the mens rea elements of the military-trespass statutes. Properly construing those statutes, the government's evidence is strong. As the district court itself concluded, if the evidence is strong, then Toirov is a flight risk who should be detained pending trial. 4A.17-18. This Court should reverse.

Respectfully submitted,

*s/ Ryan Ellison*

RYAN ELLISON
Acting United States Attorney
District of New Mexico
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
ryan.ellison@usdoj.gov

## TYPE-VOLUME CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief contains 5,200 words. I relied on my word processor to obtain the count. My word processing software is Word 2016.

*s/ Ryan Ellison*
RYAN ELLISON
Acting United States Attorney

**CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION**

I HEREBY CERTIFY that the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on October 7, 2025.

I ALSO CERTIFY that Amanda Skinner, attorney for Defendant-Appellee Komiljon Toirov, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system.

*s/ Ryan Ellison*
RYAN ELLISON
Acting United States Attorney