# No. 25-2109

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**United States of America**

       Plaintiff-Appellant,

**v.**

**Komiljon Toirov**

       Defendant-Appellee.

## Defendant-Appellee's Response-No Attachments

On Appeal from the United States District Court
For the District of New Mexico
The Honorable Sarah M. Davenport, presiding.
District Court No. 2:25-CR-1801-SMD

### ORAL ARGUMENT IS REQUESTED

Amanda Skinner
Attorney for Appellee
Federal Public Defender
District of New Mexico
506 S. Main Street, Suite 400
Las Cruces, N.M. 88001
575.527.6930
amanda_skinner@fd.org

**October 21, 2025**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND OTHER AUTHORITIES..........................iii

PRIOR AND RELATED APPEALS...................................1

STANDARD OF REVIEW.........................................2

SUMMARY OF THE ARGUMENT...................................2

STATEMENT OF THE CASE........…..................................3

ARGUMENT....................................................8

    I.      The Bail Reform Act Requires Mr. Toirov's Release...............8
    II.     18 U.S.C. § 797 Requires Knowledge of NDA Land…..........11
    III.   18 U.S.C. § 1382 Requires Knowledge of NDA Land.............15
    IV.   Mr. Toirov's Guilty Plea to Improper Entry Cannot Satisfy the *Mens Rea* elements of §§ 797 and 1382...........…........20
    V.     The Rule of Lenity Should Apply......................................24

CONCLUSION ................................................25

TYPE-VOLUME CERTIFICATION...............................…........27

**TABLE OF CASES AND OTHER AUTHORITIES**

**TABLE OF CASES**

**PAGE**

*Arizona v. United States*
  567 U.S. 387, 407 (2012)…………………………………………22

*Bryan v. United States*
  524 U.S. 184 (1998)……………………………………………13, 14

*Estate of McMorris v. C.I.R.*
  243 F.3d 1254, 1258 (10th Cir. 2001)………………………………19

*Lincoln v. BNSF Ry. Co.*
  900 F.3d 1166 (10th Cir. 2018)………………………………………2

*Muscarello v. United States*
  524 U.S. 125, 138 (1998)…………………………………………25

*Seneca-Cayuga Tribe of Okla. V. Nat'l Indian Gaming Comm'n*
  327 F.3d 1019 (10th Cir. 2003)……………………………………15

*TRW Inc. v. Andrews*
  534 U.S. 19 (2001)…………………………………………………12

*United States v. Ailon-Ailon*
  875 F.3d 1334 (10th Cir. 2017)………………………………......10

*United States v. Baker*
  508 F.3d 1321 (10th Cir. 2007)……………………………………14

*United States v. Carloss*
  818 F.3d 988 (10th Cir. 2016)…………………………………......13

*United States v. Cisneros*
  328 F.3d 610, 613 (10th Cir. 2003)………………………………11

*United States v. Cottier*

    759 F.2d 760 (9th Cir. 1985)……………………………………18

*United States v. Doby*
    928 F.3d 1199 (10th Cir. 2019)…………………………………2

*United States v. Floyd*
    477 F. 2d 217 (10th. Cir. 1973)……………………………16, 17

*United States v. Gaspar-Miguel*
    947 F.3d 632 (10th Cir. 2020)…………………………………22

*United States v. Madrigal-Valadez*
    561 F.3d 370 (4th Cir. 2009)……………………………………16

*United States v. Nunez-Soberanis*
    406 F.Supp.3d 835 (S.D. Ca. 2019)……………………………21

*Unites States v. Ruiz-Gea*
    340 F.3d 1181 (10th Cir. 2003)…………………………………24

*United States v. Salerno*
    481 U.S. 739, 747 (1987)…………………………………………9

*United States v. United States Gypsum Co.*
    438 U.S. 422 (1978)………………………………………………5

## TABLE OF OTHER AUTHORITIES

**<u>PAGE</u>**

8 U.S.C. § 1302………………………………………………………22

8 U.S.C. § 1325…………………………4, 5, 8, 12, 14, 20, 21, 22

18 U.S.C. § 1382…………………………1, 3, 5, 8, 15, 16, 17, 22, 25

18 U.S.C. § 3142(f)…………………………………………………9

18 U.S.C. § 3142(f)(2)………………………………………………10

18 U.S.C. § 3142(g)(1)-(4)............................................................7, 10

18 U.S.C. § 3142(b)............................................................................25

50 U.S.C. § 797.................1, 3, 4, 5, 6, 8, 11, 12, 13, 15, 16, 20, 21, 25

Army Regulation 190-13....................................................................15

Fed. R. Crim. P. 11(b)(3)....................................................................6

Tenth Cir. Crim. Jury § 1.38.............................................................13

This appeal is nearly identical to the Government's appeal in No. 25-2074 (*Toirov I*). In *Toirov I*, this Court remanded for "alternative 18 U.S.C. § 3142 findings under the assumption that the government's interpretation of 18 U.S.C. § 1382 and 50 U.S.C. § 797(a)(1) is correct." A4.7.[1] The district court submitted alternative findings in favor of detention. A4.18.

This Court ruled that "the district court failed to consider whether the defendant is a flight risk even if the statutory interpretation question is resolved in" Mr. Toirov's favor, vacated the release order and remanded again "for further consideration of the detention/release question consistent with this Court's order and judgment." *Id*. at 20.

On remand, the district court released Mr. Toirov, noting immigration officials released him to the community and, while the weight of the evidence is not determinative, justice demanded release

---

[1] Citations to the Government's appendices will take the following form: A1.#. The first number after "A" refers to the appendix volume on appeal, with the following number indicating the page number.

because the Government conceded the likely outcome of the case is an acquittal. *Id.* at 30.

**STANDARD OF REVIEW**

In an appeal of a detention order, this Court reviews the law de novo and accepts facts as true unless the record demonstrates they are clearly erroneous. *United States v. Doby*, 928 F.3d 1199, 1202 (10th Cir. 2019).

**SUMMARY OF THE ARGUMENT**

The Government did not argue dangerousness in support of detention, and the district court found that, under a totality of the factors, Mr. Toriov was not a flight risk and released him on his own recognizance. A4.30, 31.

This Court may "affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018). This Court should affirm solely because the Government did not dispute that Mr. Toirov was not a flight risk despite ample opportunity to argue the risk of nonappearance based on the nature of the National Defense Area (NDA) charges and Mr. Toirov's history and characteristics.

Additionally, although this Court need not reach the statutory interpretation question, the Government has a weak case against Mr. Toirov. Both NDA charges require that the Government prove beyond a reasonable doubt that Mr. Toirov knew he entered the NDA. The Government concedes Mr. Toirov had no notice he was about to enter an NDA but nevertheless urges this Court to find a conviction for improper entry supplies any necessary *mens rea* as to both charges. Gov.Br.11-23.[2]

Both judges that released Mr. Toirov rejected the Government's argument that the *mens rea* for each can be established by an improper entry. This Court could alternatively affirm the release order because the district court correctly determined the Government is unable to meet the threshold *mens rea* requirement of each statute.

<u>STATEMENT OF THE CASE</u>

The Government recently began filing criminal charges in the District of New Mexico alleging trespass into a military zone pursuant to 50 U.S.C. § 797 and/or 18 U.S.C. § 1382 ("NDA charges") for nearly

---

[2] Citations to the Government's brief will take the following form: Gov.Br.#. The number after "Gov.Br." refers to the page number.

every individual also charged with improper entry under 8 U.S.C. §
1325.

At initial appearances on April 30, 2025, the duty Assistant
Federal Public Defender ("FPD") moved to dismiss all NDA charges
pursuant to § 797.[3] The court denied the motion, and the duty FPD
continued to make unsuccessful oral motions to dismiss at the initial
appearance dockets.

Recognizing a simmering issue, the Chief Magistrate Judge, who
was assigned initial appearances beginning May 1, 2025, ordered the
United States to assert, with supporting legal authority, its position on
the appropriate *mens rea* for both NDA charges. A2.4-5. The Order
allowed the defense community to respond, and the Las Cruces
members of the CJA panel joined the FPD's response. *Id*. at 5, 20.

The Government argued any *mens rea*, as to both charges, is
supplied by a defendant's improper entry under § 1325. The defense
argued the NDA charges require the Government to prove that, at a
minimum, a defendant knew they entered the NDA. The defense
further argued both statutes have specific and unambiguous *mens rea*

_____

[3] The Government had not yet begun charging violations of § 1382.

requirements that are deeply rooted in Anglo-American criminal jurisprudence, which cannot be conveniently avoided through sleight-of-hand arguments. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978) ("The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence").

After Border Patrol Agents encountered Mr. Toirov, he was charged via complaint with three charges: improper entry under § 1325, violating a security order under § 797, and entering military property in violation of § 1382. A1.7.

The Chief Magistrate Judge completed his probable cause review in Mr. Toirov's case and dismissed both NDA charges after determining they were, in fact, unsupported by probable cause.[4] *Id*. at 10-25. Undeterred, the Government refiled the same NDA charges against Mr. Toirov using an information, preventing another probable cause review by the court. *Id*. at 26-27.

---

[4] Mr. Toirov disagrees with the Chief Magistrate Judge's conclusion that an improper entry proves he knew his conduct was unlawful, but agrees that the Government must prove knowledge of NDA land as an element under each statute. A1.19, 24.

Mr. Toirov pleaded guilty to the improper entry charge at his initial appearance ten days later. *Id*. at 4. The Government did not oppose the time-served sentence requested by Mr. Toirov. *Id*. The court imposed a time-served sentence and heard bond arguments on the NDA charges.[5] *Id*. The court released Mr. Toirov, and the Government appealed the release order to the district court. *Id*. at 4, 28-29.

At the hearing on the bail appeal, the Government conceded it was "not arguing dangerousness or a dangerous criminal history" and that there was no information that Mr. Toirov "knew that this [land] was an NDA." 3A. 10,11, 20. The district court adopted the Chief Magistrate Judge's "reasoning and conclusions of law in the Order Dismissing Charges in this case" and specifically noted the Government's argument that the willfulness requirement of § 797 could be sufficiently shown by Mr. Toirov's improper entry into the United States was "unpersuasive." A1. 44-45. The district court found "the weight of the United States'

---

[5] Every Magistrate Judge in the District of New Mexico has refused to accept a guilty plea on an NDA charge under circumstances similar to Mr. Toirov's case. *See* Fed. R. Crim. P. 11(b)(3); *see also* A1.11 (noting "for both probable cause review and the Court's Rule 11 obligations, conclusions about the requisite elements of charged crimes are essential.").

evidence in this case is not strong and does not weigh in favor of detention" and released Mr. Toirov on his own recognizance. *Id*. at 45. The Government timely appealed and this Court eventually remanded for "further consideration of the detention/release question." *Id*. at 46; A4.20.

On remand, the district court again evaluated the § 3142(g)(1)-(4) factors:

## 3142(g)(1) Nature and Circumstances of the NDA Charges

The district court noted the Government "offered only cursory arguments as to how the nature and circumstances of [the trespassing counts] support detention." *Id*. at 27. Mr. Toirov, the district court found, was released by immigration officials and has an incentive to return for trial as the Government has conceded it cannot meet the "the elemental requirements that every judge in the District of New Mexico Las Cruces courthouse, in both magistrate court and district court, has concluded must be met to convict." A4.28.

## 3142(g)(2) The Weight of the Evidence Against Mr. Toirov

The district court found the weight of the evidence is "fatally flawed" because the district court was unpersuaded by the

Government's argument that "the willfulness requirement of 50 U.S.C. § 797 can be sufficiently shown by Defendant's simultaneous illegal entry into the United States in violation of 8 U.S.C. § 1325, and that his entry into the NMNDA while unlawfully entering the United States violates the plain text of 18 U.S.C. § 1382 with no further proof of knowledge." A4.29.

## 3142(g)(3) The History and Characteristics of Mr. Toirov

The district court found "the United States offered no information as to the history and characteristics of the defendant." The district court noted Mr. Toirov's release to the community by ICE and found

> [t]his evidences ties to this country and belief by the government writ large that the defendant will honor his duty to keep officials apprised of his whereabouts and contact information in order to submit to future proceedings, and potentially be removed from the United States at some future designated time.

*Id.* at 30.

## 3142(g)(4) Dangerousness

The district court found there is "no information that the defendant presents a danger to any other person or the community, pursuant to 18 U.S.C. § 3142(g)(4)." *Id.* at 30.

The Government timely appealed. *Id*. at 34.[6]

I.  **The Bail Reform Act Requires Mr. Toirov's Release.**

"The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987); *see* 18 U.S.C. § 3142(f) (detention hearings available for crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755.

In determining whether release is appropriate, the court must consider the nature and circumstances of the offenses charged, the weight of the evidence, the history and characteristics of Mr. Toirov, and any risk of danger posed by release. 18 U.S.C. § 3142(g)(1)-(4).

---

[6] Mr. Toirov reserves the right to challenge the validity of the Government's appeal, given that the only signatory is Ryan Ellison, whose interim appointment as U.S. Attorney is contested. *See* Motion to Dismiss Indictment and Disqualify United States Attorney, EFC no. 16 in *United States v. Gunther*, 1:25-cr-03366-JB (D. N.M.), filed Sept. 15, 2025.

The Government argues they should prevail because the district court's assessment of the elements of the trespassing counts "rests on a statutory-interpretation error." Gov.Br.7. However, in a bail appeal, "[t]he Government bears the burden of proving a defendant is a flight risk by a preponderance of the evidence." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017).[7]

At the bail appeal hearing, the Government made unsupported accusations that Mr. Toirov would flee if released. A3.41-42. The district court summarized the Government's argument on flight risk as "basically saying the defendant entered illegally and has pled guilty, the nature and circumstances of these remaining offenses weigh against the defendant because he may sneak off and not comply[.]" *Id*. at 10.[8]

---

[7]Undersigned counsel acknowledges the district court incorporates analysis of the elements of the trespassing counts in the analysis of § 3142(g)(1) and (3) and that the Government's charging scheme is straining government, court, and defense resources in the District of New Mexico.

[8] While it is possible Mr. Toirov could fail to appear for trial because he is removed from the United States by immigration authorities, this does not factor into this Court's analysis of flight risk. *See Ailon-Ailon*, 875 F.3d at 1341(holding that, "in the context of § 3142(f)(2), the risk that a defendant will "flee" does not include the risk that ICE will involuntarily remove the defendant.").

The district court's findings that release was appropriate and that there was no "information to show that conditions" of release were even necessary are not clearly erroneous on this record. *Id.* at 47; *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003) (stating this Court accepts "the district court's findings of historical fact which support that decision unless they are clearly erroneous."). These findings and the Government's concession it had nothing to present on dangerousness are enough to uphold the release order in this case. *See* A3.10-11; *see also* 18 U.S.C. § 3142 (b)(c) (stating the judicial officer "shall" order pretrial release on personal recognizance "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.").

II.     **50 U.S.C. § 797 REQUIRES KNOWLEDGE OF NDA LAND.**

The district court correctly determined the Government could not meet its burden to prove the willfulness requirement under § 797. A1.45 (finding "unpersuasive the United States' argument that the willfulness requirement of 50 U.S.C. § 797 can be sufficiently shown by Defendant's

simultaneous illegal entry into the United States in violation of 8 U.S.C. § 1325.").

Section 797 states "Whoever *willfully* violates any defense property security regulation shall be [fined or imprisoned]." 50 U.S.C. § 797 (emphasis added). "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). The Government urges this Court to ignore this basic cannon.

First, the Government posits that a defendant need not know he was violating a defense property security regulation. Gov.Br.12-13. Not only does the statute explicitly specify the required *mens rea* for a violation, the statute further requires that "[a]ny regulation or order covered by sub § (a) shall be posted in conspicuous and appropriate places." 50 U.S.C. § 797(b). If no knowledge of the existence of the regulation was required, there would be no need to post it or otherwise publicize that a regulation covers the land in question and subsection (b) of § 797 would be wholly superfluous.

Second, "in the criminal context, a 'willful' act is one undertaken with 'bad purpose.'" *Bryan*, 524 U.S. at 191. Thus, if this Court takes up the statutory interpretation question, the Court must discern what "bad purpose" the accused must have at the time they "violate any defense property security regulation." 50 U.S.C. § 797. A defendant who wholly lacks an understanding that he is entering. Indeed, the legal principle that notice is required for willful trespass goes back to Blackstone: "Every trespass is *wilful*, where the defendant has notice, and is especially forewarned not to come on the land." *United States v. Carloss*, 818 F.3d 988, 1009 n.7 (10th Cir. 2016) (Gorsuch, J., dissenting) (quoting Blackstone and collecting additional sources).

The Tenth Circuit Pattern Criminal Jury Instructions suggest that "when a statute uses [willfully], care should be taken to distinguish between its meanings. A 'willfulness' requirement may impose on the Government the burden of proving that the defendant had knowledge of his conduct, or that his conduct was unlawful, or of the precise legal duty, the violation of which forms the substance of the charges against the defendant." Tenth Cir. Crim. Jury § 1.38.

While "willful" does not always trigger a specific intent requirement, the term "differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind." *Bryan*, 524 U.S. at 191; *see also United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir. 2007) (contrasting "knowing" requirement that "simply requires proof of knowledge of the facts" with "willfulness," which "generally requires that the defendant act with a 'bad purpose'").

Applying these well-established standards, the statute plainly requires the Government to prove that Mr. Toirov acted with the specific intent to violate a specific security regulation. That is, the statute requires that a person "willfully violate" a certain subset of regulations: those that protect defense property security. Because a person must "willfully violate" such a regulation, they must not only act with some nefarious intent, but that nefarious intent must also be directed at violating a specific defense property security regulation. The Army adopts these principles and specifically notes in the Army Physical Security Program materials that "[f]ailure to post conspicuous signs and notices to give persons approaching a restricted area actual

knowledge of the restriction may hamper any resulting legal procedure."[9] AR 190-13 at 6-7(b).

The statute's specific focus on "defense property security regulation[s]" to the express exclusion of other forms of regulations is also illustrative. It is a long established and familiar maxim of statutory interpretation that "the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced." *Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 & n.24 (10th Cir. 2003). If Congress had intended for § 797 to apply to acts other than those directed toward willful violations of defense property security regulations, it would have said so. The statutes' failure to include any subsection of regulations or laws (e.g., immigration offenses) other than defense security regulations unambiguously limits the statute to only "defense property-security regulation[s]." 50 U.S.C. § 797.

III.  **18 U.S.C. § 1382 REQUIRES KNOWLEDGE OF NDA LAND.**

---

[9] The regulations' reference to signage is relevant because it highlights the Army's understanding that a would-be-trespasser must have actual knowledge they are approaching a restricted area if charges will be pursued.

The Government's inability to prove Mr. Toirov knew he was approaching an NDA also derails their attempt to prosecute him under § 1382. The statute applies to anyone who "within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation[.]" 18 U.S.C. § 1382. Like its arguments regarding § 797, the Government argues that an improper entry automatically supplies any *mens rea* necessary to prove the individual went upon the NDA for a prohibited purpose, and that there is no notice requirement. Every Circuit, including this one, that has considered § 1382 has "concluded that notice is a necessary element of § 1382 when the indictment alleges that the accused violated an entry requirement." *United States v. Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009) (holding a conviction for unlawfully entering a military installation requires notice); *United States v. Floyd*, 477 F.2d 217 (10th Cir. 1973) (upholding conviction under § 1382 due to actual notice).

At the outset, the Government ignores the plain text of § 1382, which is intended only to punish those who act with the specific intent

to trespass upon military property and then commit some other offense. For example, a person who purposefully enters military property for the purpose of committing a burglary could be convicted under § 1382, but only if the Government proves that the individual: (1) intended to trespass upon the military property specifically; and (2) that their illegal trespass was done specifically in furtherance of the burglary offense.

This Court has interpreted § 1382's "prohibited purpose" language as being directly tied to a knowledge and/or notice requirement. *See United States v. Floyd*, 477 F.2d 217 (10th Cir. 1973). In *Floyd*, the defendants were charged after entering a military base to protest the Vietnam War. *Id*. at 225. When the group crossed a white line signifying the entrance to the base, a Lieutenant Colonel met them and read a statement telling them they "were trespassing" and warning them they would be arrested and prosecuted under § 1382 if they did not comply. *Id*. at 220.

The record established that protesters did not qualify as visitors, so the intent to protest was the prohibited purpose. *Id*. at 221. In addition, the defendants had ample warning not to enter because base

personnel attempted to hold the group back and told them they were not allowed to enter without permission of the base commander. *Id.* at 221, 224.

This Court upheld the convictions on the grounds that the warning sign posted at the entrance to the base was visible to anyone who walked or drove onto the base and stated that permission to enter is required. *Id.* at 225 ("In lieu of obeying [the warnings], they sat down and refused to leave. They carried placards protesting the war in Vietnam. Their intent to enter the base without permission and their intent to demonstrate against the Vietnam war on the base may be reasonably inferred from these facts.").

"Where entry alone is the basis of the violation," the Government must prove that the defendant knew that "the entry [was] unauthorized." *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985). So, even if Mr. Toirov is charged under a theory of entry alone, the Government must still prove Mr. Toirov knew his entry on the NDA

was unauthorized. Signage, along with the location of Mr. Toirov's entry in relation to any signage, is critical to Mr. Toirov's defense.[10]

On May 2, 2025, undersigned counsel made an emergency discovery demand at initial appearances to determine what, if any, signage was placed upon the newly erected military land along the New Mexico and Mexico border.

While the court denied the specific discovery demand, the Government did coordinate a visit to a portion of the border for undersigned counsel and her colleagues on May 8, 2025. It was readily apparent that the location of the signage is wholly inadequate to inform anyone approaching the alleged military land from either side of the border that they are entering the space prior to entering it. *See* SA.1-

---

[10] The Government has recently conceded, in a separate case, that it was mistaken as to what areas of land the NDA encompasses. *See* United States' Response to Court's Oral Order (explaining case was dismissed because "the United States Attorneys Office learned from the United States Border Patrol that portions of the international border previously understood as encompassed by the NM NDA were not, in fact, transferred to the jurisdiction of the Department of the Army.") *United States v. Pascual Jimenez-Santiz*, No. 2:25-cr-1047 GBW (Doc. 11); *see also Estate of McMorris v. C.I.R.*, 243 F.3d 1254, 1258 n.8 (10th Cir. 2001) (explaining this Court can take judicial notice of documents and docket materials filed in other courts).

2.[11] (Affidavit from Federal Defender Investigator, explaining the locations of the signs observed on May 8, 2025).

IV.  **MR. TOIROV'S GUILTY PLEA TO IMPROPER ENTRY CANNOT SATISFY THE *MENS REA* ELEMENTS OF §§ 797 AND 1382.**

The Government's argumentes that its case against Mr. Toirov is strong because Mr. Toirov's improper entry into the United States supplies the necessary *mens rea* as to both NDA charges, is wholly inconsistent with the scienter requirements of the NDA charges. For each statute, an individual must have the purpose of entering onto military property they cannot otherwise enter.

Moreover, even if the statutes only required general knowledge of the conduct's unlawfulness, Mr. Toirov's improper entry conviction would be insufficient. To secure the improper entry conviction, the Government established only that Mr. Toirov intended to enter the United States and that he did not enter at a designated port of entry. 18 U.S.C. § 1325. Mr. Toirov's guilty plea to improper entry did not establish that Mr. Toirov knew he was an undocumented alien or otherwise knew he did not have permission to enter the United States

---

[11] "SA" refers to Mr. Toirov's supplemental appendix.

at the location he entered. *See United States v. Nunez-Soberanis*, 406 F.Supp.3d 835, 842-45 (S.D. Ca. 2019) (holding that "[t]here is no evidence that Congress intended to apply a scienter requirement to Defendant's status as an alien" under § 1325). Mr. Toirov's plea to improper entry did not constitute an admission that he knowingly acted unlawfully at any point.

The Government acknowledges, albeit in a footnote, that improper entry and § 797 do not share an identical *mens rea*. Gov.Br. 11. The Government correctly notes that improper entry simply requires the "intent to enter the United States, but not knowledge of unlawfulness." *Id*. And yet, the Government's proposed *mens rea* element of § 797 requires a heightened standard of proof for the Government to meet - knowledge of unlawfulness.

The same analysis applies to § 1382. It cannot be disputed that § 1382 requires a person act with the "purpose" of committing a violation of law. However, an improper entry conviction does not establish that Mr. Toirov knew he was an undocumented alien or knowingly acted unlawfully at the time he entered the United States. *See Nunez-Soberanis*, 406 F.Supp.3d at 842-45 (holding that "[t]here is no evidence

that Congress intended to apply a scienter requirement to Defendant's status as an alien" under § 1325).

At minimum, the purposeful requirement of § 1382 mandates the Government prove an additional element beyond that required in an improper entry case; that Mr. Toirov knew he was not allowed to enter the United States somewhere other than a port of entry. Absent such evidence, a conviction under § 1325 cannot alone furnish probable cause for the purposeful *mens rea* required to commit an offense under § 1382.

Moreover, Mr. Toirov completed the crime of improper entry before allegedly violating the NDA statutes. *See Arizona v. United States*, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain in the United States."); 8 U.S.C. § 1302 (requiring that aliens register *within 30 days of entry* into the United States) (emphasis added); *see also United States v. Gaspar-Miguel*, 947 F.3d 632, 634 (10th Cir. 2020)(noting that courts and the Board of Immigration Appeals have continued to interpret "enter," in a variety of contexts, as only completed once an individual is "free from official restraint.").

Because the crime of unlawful entry was complete at the moment of entry, Mr. Toirov's presence on an alleged military instillation is not undertaken for the "purpose" of committing an additional criminal offense. Stated differently, because the offense of improper entry is completed at the moment of entry, the Government must separately prove that Mr. Toirov possessed the subjective intent to commit an additional, inchoate, violation while present on the NDA.

Even if this Court is persuaded a conviction for improper entry *could* satisfy the *mens rea* requirements of one or both NDA charges without additional facts, there is no support for the Government's position that Mr. Toirov knew his conduct was unlawful or that he entered the United States for a bad purpose, when neither of those alleged facts are elements of an improper entry. *See* A1.4 (docket entry for change of plea hearing stating, in relevant part: "Guilty Plea entered to Count 1 only. Defense counsel proffers for time served sentence. Government has no objection to time served sentence."). On this record,

Mr. Toirov's improper entry conviction has no bearing on the strength of the Government's case on the remaining NDA charges.[12]

## V. THE RULE OF LENITY SHOULD APPLY.

Even if this Court is persuaded that the Government's aberrant charging scheme is allowed, the rule of lenity should apply to the Government's proposed use of both statutes.

The rule of lenity "instructs courts to interpret ambiguous criminal statutes favorably to the accused." *Unites States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003). While Mr. Toirov does not concede either statute is ambiguous, the Court could find attempts at statutory construction of both statutes leaves the Court without clarity and that the rule of lenity should apply, so that Mr. Toirov does not face an

---

[12] The Government failed to prove the land in question was NDA land at the only NDA case to proceed to trial in the District of New Mexico. *See* Order Dismissing Counts 2 and 3 of the Information with Prejudice, *United States v. Luis Jesus Escobedo-Molina*, 2:25-cr-014390-MIS Doc. 23 at 15. (quoting the Chief Magistrate: "the United States has come in here and put on not a single bit of evidence that allowed me to find that he even entered the National Defense Area, based on the witnesses I heard. And obviously I'm going to be granting directed verdict on Counts 2 and 3[.]" and further stating that the Government's conduct was "very, very disturbing"); *see also C.I.R.*, 243 F.3d at 1258 n.8 (explaining this Court can take judicial notice of documents and docket materials filed in other courts).

additional 18 months of prison time based on his improper entry into the United States. *Muscarello v. United States*, 524 U.S. 125, 138 (1998) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, ... we can make no more than a guess as to what Congress intended.") (cleaned up); *see also* 50 U.S.C. § 797(a)(1) (noting a conviction exposes a defendant to up to one year of incarceration); 18 U.S.C. § 1382 (noting a conviction exposes a defendant to up to six months of incarceration).

## CONCLUSION

"Justice and winning do not always go hand-in-hand[…][I]n the face of the government's concession of near certain defeat, justice demands that Mr. Toirov not be further deprived of his liberty." A4.30-31.

The Government concedes Mr. Toirov is not a danger if released and further concedes there is no evidence that Mr. Toirov knowingly entered an NDA. The district court's finding that the Government offered only "cursory arguments" on how the nature and circumstances of the NDA charges support detention, regardless of the strength of those charges, support detention is unchallenged by the Government.

And Mr. Toirov's release by immigration officials supports the district court's finding, also unchallenged by the Government, that Mr. Toirov has ties to this country.

This Court should affirm the release order because the Government has failed to meet its burden to establish release will not reasonably assure Mr. Toirov's appearance. *See* 18 U.S.C. § 3142(b) ("the [court] *shall* order the pretrial release of the person on personal recognizance [or conditions…] *unless* the [court] determines that such release will not reasonably assure the appearance of the person as required[.]") (emphasis added).

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
506 S. Main Street, Suite 401
Las Cruces, NM 88001
(575) 527-6930
amanda_skinner@fd.org

s/Amanda Skinner
Amanda Skinner
Assistant Federal Public Defender
Attorney for Appellee Komiljon Toirov

# CERTIFICATE OF COMPLAINCE WITH RULE 32(A)

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii). It is printed in Century Schoolbook, a proportionately spaced font, and includes 4976 words, excluding items enumerated in Rule 32(f). I relied on my word processor to obtain the word count.

*/s/ Amanda Skinner*
Amanda Skinner
Assistant Federal Public Defender